WAKE FOREST UNIV. HEALTH SCIENCES v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[180 N.C. App. 327 (2006)]

WAKE FOREST UNIVERSITY HEALTH SCIENCES AND HUNTERSVILLE DIALYSIS CENTER OF WAKE FOREST UNIVERSITY D/B/A HUNTERSVILLE DIALYSIS CENTER, PETITIONER v. NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF FACILITY SERVICES, RESPONDENT AND BIO-MEDICAL APPLICATIONS OF NORTH CAROLINA, INC. AND TOTAL RENAL CARE OF NORTH CAROLINA, LLC, RESPONDENT-INTERVENOR

No. COA05-1597

(Filed 21 November 2006)

**Hospitals and Other Medical Facilities— certificate of need— transfer of dialysis stations—only in-center patients counted**

A certificate of need to transfer dialysis units to an adjacent county was correctly denied. It is implicit in State dialysis policies that only in-center patients are counted when applying for a certificate of need for this purpose; while in-home patients would benefit from the transfer, they are not patients currently served or sought by the stations.

Appeal by Petitioners from a final agency decision entered 22 August 2005 by the North Carolina Department of Health and Human Services, Division of Facility Services. Heard in the Court of Appeals 10 October 2006.

*Bode, Call & Stroupe, LLP, by S. Todd Hemphill, Diana Evans Ricketts and Matthew A. Fisher, for petitioner-appellant.*

*Attorney General Roy Cooper, by Assistant Attorney General Thomas M. Woodward, for respondent-appellee.*

*Wyrick Robbins Yates & Ponton, LLP, by K. Edward Greene, Lee M. Whitman and Sarah M. Johnson, for respondent-intervenor appellee, Bio-Medical Applications of North Carolina, Inc.*

*Poyner & Spruill, LLP, by William R. Shenton, Thomas R. West and Pamela A. Scott, for respondent-intervenor appellee, Total Renal Care of North Carolina, LLC.*

MARTIN, Chief Judge.

Wake Forest University Health Sciences and Huntersville Dialysis Center (hereinafter "Petitioners") appeal the final agency decision of the North Carolina Department of Health and Human Services, Division of Facility Services, granting summary judgment in favor of

WAKE FOREST UNIV. HEALTH SCIENCES v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[180 N.C. App. 327 (2006)]

Respondents and upholding the decision of the Certificate of Need Section of the Facility Services Division to deny Petitioners' application for the transfer of ten dialysis stations.

Briefly summarized, this appeal comes before us on the following record: Petitioners filed a Certificate of Need ("CON") application with the North Carolina Department of Health and Human Services, Division of Facility Services, Certificate of Need Section (hereinafter "Agency") for the approval of the transfer of ten dialysis stations from Iredell County to Mecklenburg County. The application sought to relocate dialysis stations to a contiguous county based on the surplus of fifteen dialysis stations in Iredell County and the deficit of ten dialysis stations in Mecklenburg County.

Specifically, Petitioners' proposal would allow the transfer of eighteen in-center dialysis patients currently served by Petitioners' Lake Norman facility in Iredell County to the new Huntersville facility in Mecklenburg County along with the transfer of an existing home dialysis patient residing in Mecklenburg County from Petitioners' Statesville Dialysis Center to the new Huntersville facility. Petitioners sought to move dialysis stations from the Iredell County facility with the most underused capacity, Statesville Dialysis.

In general, there are two types of dialysis treatments available to end-stage renal disease (ESRD) patients which are provided by dialysis facilities: in-center hemodialysis and peritoneal dialysis or home dialysis. In-center hemodialysis involves the process of cycling a patient's blood through an external dialysis machine that replaces the function of the kidney. The external dialysis machines must be CON-approved and are known as dialysis stations. Patients participating in in-center hemodialysis treatment generally need treatment three times a week in intervals of two-to-four hours.

The second method, home dialysis, involves the process of patients introducing a sterile premixed solution into their abdominal cavity. This method does not require the use of dialysis stations within a dialysis center; however, patients must be trained by the dialysis center for home dialysis over a period of several weeks and then re-visit the center for regularly scheduled check-ups.

On 28 July 2004 the Agency denied Petitioners' application based upon the Agency's finding that the application did not conform to the criterion set forth in Policy ESRD-2: Relocation of Dialysis Stations.

WAKE FOREST UNIV. HEALTH SCIENCES v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[180 N.C. App. 327 (2006)]

Specifically, the Agency found that Petitioners' application failed to comply with the requirements under ESRD-2 that dialysis stations be relocated only to "contiguous counties *currently served* by the facility[.]" (Emphasis added). The Agency further found that Petitioners' application failed to conform with Criterion 1, 3, 4, 5, 6, 12, and 18(a) under N.C. Gen. Stat. § 131E-183(a).

Subsequent to the Agency's denial of the application for a CON, Petitioners filed a petition for a contested case hearing in the Office of Administrative Hearings (hereinafter "OAH"). Total Renal Care of North Carolina, LLC and Bio-Medical Applications of North Carolina, Inc. (hereinafter "Respondent-Intervenors") moved to intervene, and their motions were subsequently granted by OAH. Petitioners then filed a motion with OAH for partial summary judgment and Respondent-Intervenors subsequently filed cross-motions for summary judgment.

A recommended decision was issued by the Administrative Law Judge (hereinafter "ALJ") denying Petitioners' motion for partial summary judgment, granting Respondent-Intervenors' motions for summary judgment and recommending that the decision to deny the application for a CON be upheld. The Agency adopted the recommended decision of the ALJ and issued a final agency decision in accordance therewith. Petitioners appeal, contending the Agency erred in concluding that their application failed to meet Criterion 1 under ESRD-2.

Petitioners assert that the Agency's determination that their application for a CON was non-conforming with Criterion 1 was erroneous as a matter of law. Specifically, N.C. Gen. Stat. § 131E-183 states that all applications for a certificate of need must comply with the policies and need determinations set forth in the State Medical Facilities Plan ("SMFP"). N.C. Gen. Stat. § 131E-183(a)(1) (2005).

Where a party contends that an agency decision was based on an error of law, the appropriate standard of review is *de novo*. *Dialysis Care of N.C., LLC v. N.C. Dep't of Health and Human Servs.*, 137 N.C. App. 638, 646, 529 S.E.2d 257, 261, *aff'd*, 353 N.C. 258, 538 S.E.2d 566 (2000).

The 2004 SMFP Policy ESRD-2 governs the relocation of dialysis stations and states:

Relocations of existing dialysis stations are allowed only within the host county and to contiguous counties *currently served* by

WAKE FOREST UNIV. HEALTH SCIENCES v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[180 N.C. App. 327 (2006)]

the facility. Certificate of need applicants proposing to relocate dialysis stations shall:

(1) demonstrate that the proposal shall not result in a deficit in the number of dialysis stations in the county that would be losing stations as a result of the proposed project, as reflected in the most recent semiannual Dialysis Report, and

(2) demonstrate that the proposal shall not result in a surplus of dialysis stations in the county that would gain stations as a result of the proposed project, as reflected in the most recent semiannual Dialysis Report.

10A N.C.A.C: 14B.0138 (2006) (emphasis added).

The dispute in this case centers around the meaning of the words "currently served" as contained in the aforementioned policy. The final agency decision found the application for a certificate of need to be non-conforming with this section in that it did not report that any in-center dialysis patients from Mecklenburg County were currently being served by the Statesville Dialysis Center, the location from which the stations were being relocated. Specifically, the Agency concluded that in determining whether a contiguous county was currently served by the facility from which dialysis stations were being transferred, only in-center dialysis patients were to be considered and not home based patients.

In interpreting a statute, we first look to the plain meaning of its language. Where the language of a statute is clear, the courts must give the statute its plain meaning; however, where the statute is ambiguous or unclear as to its meaning, the courts must interpret the statute to give effect to the legislative intent. *Burgess v. Your House of Raleigh*, 326 N.C. 205, 209, 388 S.E.2d 134, 136-37 (1990). Respondent correctly notes that the reviewing criteria are set forth in rules promulgated by the Agency and therefore the Agency's interpretation of the policies should be given some deference.

Although the interpretation of a statute by an agency created to administer that statute is traditionally accorded some deference by appellate courts, those interpretations are not binding. "The weight of such [an interpretation] in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronounce-

WAKE FOREST UNIV. HEALTH SCIENCES v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[180 N.C. App. 327 (2006)]

ments, and all those factors which give it power to persuade, if lacking power to control."

*Total Renal Care of N.C., LLC v. N.C. Dep't of Health and Human Servs.*, 171 N.C. App. 734, 740, 615 S.E.2d 81, 85 (2005) (citations omitted).

With these principles of construction in mind we must determine the meaning of the words "currently served" as set forth in the SMFP guidelines for the relocation of dialysis stations. To "serve," as defined by *American Heritage College Dictionary*, means "to provide goods and services for." *American Heritage College Dictionary* 1246 (3rd ed. 1997). Additionally, the Agency relied on Principle 5 enumerated in the 2004 SMFP which states that in projecting the need for new dialysis stations for end-stage renal disease dialysis facilities in North Carolina that, "[h]ome patients will *not* be included in the determination of need for new stations. Home patients include those that receive hemodialysis or peritoneal dialysis in their home." (Emphasis added).

The Agency asserts and this Court agrees that it is implicit in the policies set forth, as well as in the action sought by Petitioners, i.e., the transfer of dialysis stations, that only in-center patients would be considered in determining whether the application complies with ESRD-2. The application seeks to transfer dialysis stations. These stations are only used by in-center hemodialysis patients. While home-center patients would benefit from the ability to transfer to a center located within Mecklenburg County, they are not the patients currently served by or sought to be served by the dialysis stations. Therefore, within the context of applying for a certificate of need contemplating the transfer of dialysis stations, the Agency correctly interpreted ESRD-2's terms "currently served" to include only in-center patients, those patients who now require the use of dialysis stations. Accordingly, we overrule Petitioners' corresponding assignment of error and hold the Agency correctly determined that Petitioners' application for the transfer of ten dialysis stations failed to conform to the criteria set forth under ESRD-2.

Because we affirm the Agency's final decision, we need not address Respondents' cross-assignment of error. N.C.R. App. P 10(d) (2006); *see Carawan v. Tate*, 304 N.C. 696, 286 S.E.2d 99 (1982) (purpose of cross-assignment of error is to protect an appellee who has been deprived, by an action of the trial court, of an alternative legal basis upon which the judgment might be upheld).

Affirmed.

Judges WYNN and McGEE concur.