HOSPICE & PALLIATIVE CARE CHARLOTTE REGION d/b/a HOSPICE AT CHARLOTTE, Petitioners v. NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF FACILITY SERVICES, CERTIFICATE OF NEED SECTION, Respondent-Appellee, and COMMUNITY HOME CARE OF JOHNSTON COUNTY, INC. d/b/a/ COMMUNITY HOME CARE AND HOSPICE, Respondent-Intervenor-Appellant

No. COA06-1484

(Filed 7 August 2007)

**1. Hospitals and Other Medical Facilities— hospice—licensed and operational—certificate of need oversight**

An agency correctly concluded that a contested case was not moot where the mootness claim was based on the erroneous premise that a new hospice office was no longer subject to certificate of need oversight because the office was licensed and fully operational.

**2. Hospitals and Other Medical Facilities— hospice—opening office in another county—certificate of need required**

A Johnson County hospice was required to obtain a certificate of need before opening a hospice office in Mecklenburg County even though it had obtained a "no review" letter.

Appeal by respondent-intervenor from final agency decision entered 9 August 2006 by North Carolina Department of Health and Human Services, Division of Facility Services Director Robert J. Fitzgerald. Heard in the Court of Appeals 7 June 2007.

*Parker Poe Adams & Bernstein, LLP, by Renee J. Montgomery and Robert A. Leandro for Petitioner-Appellee.*

*Williams Mullen Maupin Taylor, P.C. by Marcus C. Hewitt and Kevin Benedict for Respondent-Intervenor-Appellant.*

*Attorney General Roy A. Cooper, III, by Assistant Attorney General June S. Ferrell for Respondent-Appellee.*

STROUD, Judge.

Respondent-intervenor Community Home Care of Johnston County, Inc. [Community] appeals from the final agency decision entered by North Carolina Department of Health and Human Services [DHHS], Division of Facility Services [DFS] in a contested case. Petitioner Hospice & Palliative Care Charlotte Region [HPC] contested the DHHS, DFS Certificate of Need Section's [CON Section]

HOSPICE & PALLIATIVE CARE CHARLOTTE REGION v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[185 N.C. App. 109 (2007)]

issuance of a "No Review" letter to Community, which authorized Community to open a hospice office in Mecklenburg County, North Carolina without first obtaining a Certificate of Need [CON] from the department. Community contends that its Mecklenburg County office is a "branch office" of its existing licensed and certified Johnston County hospice. The final DHHS agency decision granted summary judgment in favor of HPC based upon the agency's conclusion that Community's Mecklenburg County hospice office was a "new institutional health service" for which Community was required to obtain a CON. Community obtained a license for its Mecklenburg County hospice office from the DHHS DFS License and Certification Section four days before HPC filed this contested case.

This Court must resolve two issues on appeal: (1) whether the License and Certification Section's issuance of a license for Community's Mecklenburg County hospice office, which then became "fully operational," mooted the contested case filed by HPC, and (2) whether Community established a "new institutional health service" in Mecklenburg County for which it was required to obtain a CON. We affirm.

## I. Factual Background

Community is a health service provider that has previously obtained a CON for the establishment of a hospice in Johnston County, North Carolina. On 29 June 2005, Community opened a hospice office in Mecklenburg County, North Carolina and began serving its first patient, who was named M.D. That same day, Community sent correspondence to the CON Section, describing the hospice services it was providing to M.D. in Mecklenburg County and requesting a "No Review" letter for the development of a "branch office" in that location. A "No Review" letter documents the CON Section's determination that a proposed project is not a "new institutional health service" for which the health service provider is required to obtain a CON. The CON Section privately issued Community a "No Review" letter dated 20 July 2005 for its Mecklenburg County hospice office.

Based on the 20 July 2005 "No Review" letter, Community submitted a licensure application to the DHHS DFS Licensure and Certification Section. The Section issued Community a license for its Mecklenburg County hospice office on 25 July 2005.[1] According to

---

1. Although the letter accompanying the license was dated 25 July 2005, the license itself was effective 22 July 2005, which is the date on which Community filed its licensure application.

IN THE COURT OF APPEALS                111

HOSPICE & PALLIATIVE CARE CHARLOTTE REGION v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[185 N.C. App. 109 (2007)]

Community, its Mecklenburg County hospice office "has been properly licensed and fully operational since that time."

On 29 July 2005, nine days after the CON Section's private issuance of the "No Review" letter to Community and four days after the Licensure and Certification Section's public issuance of a license for Community's Mecklenburg County hospice office, HPC filed a contested case pursuant to N.C. Gen. Stat. § 131E-188 (2005). In its written and oral argument to the trial tribunal, HPC argued that Community's Mecklenburg County hospice office is a "new institutional health service" for which Community is required to obtain a CON and that the CON Section erred by issuing Community a "No Review" letter for that location. Community responded that the contested case filed by HPC was moot because the CON Section has "no continuing oversight of a project once the project is licensed and operational." Alternatively, Community argued that its Mecklenburg County hospice office was a "branch office" of its licensed and certified existing Johnston County hospice, not a "new institutional health service."

On 9 August 2006, DFS Director Robert J. Fitzgerald issued a final agency decision ordering the CON Section to withdraw the "No Review" letter and deciding that "Community must obtain a CON before developing or offering a hospice office in Mecklenburg County because Mecklenburg County was not in Community's Johnston County office's service area." Community appealed, and on 31 August 2006 Community also filed petition in this Court for writ of supersedeas and a motion for temporary stay of the final agency decision (COAP06-724). This Court granted Community's petition on 19 September 2006 and motion on 1 September 2006.

## II. Mootness

**[1]** Community argues that DFS erred by concluding that the contested case is not moot. In support of its argument Community states that "the CON Section has no continuing oversight of the project after the issuance of a no-review letter." Citing, *Mooresville v. Hosp. Mgmt Assocs. Inc. v. N.C. Dep't of Health & Human Servs.*, 360 N.C. 156, 622 S.E.2d 621 (2005) (per curiam), Community reasons that "this case is rendered moot by the subsequent licensure of the [Mecklenburg County hospice] office and its becoming operational and serving patients." We disagree.

The Supreme Court of North Carolina has explained that a case should be considered moot when "a determination is sought on a mat-

HOSPICE & PALLIATIVE CARE CHARLOTTE REGION v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[185 N.C. App. 109 (2007)]

ter which, when rendered, cannot have any practical effect on the existing controversy." *Roberts v. Madison Cty Realtors Ass'n*, 344 N.C. 394, 398-99, 474 S.E.2d 783, 787 (1996); *Lange v. Lange*, 357 N.C. 645, 588 S.E.2d 877 (2003). If a case becomes moot "at any time during the course of the proceedings, the usual response should be to dismiss the action." *In re Peoples*, 296 N.C. 109, 148, 250 S.E.2d 890, 912 (1978), *cert. denied*, 442 U.S. 929, 61 L. Ed. 2d 297 (1979).[2] Community argues that the final agency decision entered by DFS "cannot have any practical effect" on the case *sub judice* because its Mecklenburg County hospice office "has been properly licensed and fully operational since" 25 July 2005.

Initially, we note that Community's "mootness" claim is based on the premise that its Mecklenburg County hospice office is no longer subject to CON Section "oversight" because the office is "licensed and fully operational." This is not true.

N.C. Gen. Stat. § 131E-190 (2005) confers authority on DHHS to impose multiple penalties on any health service provider that "proceeds to offer or develop a new institutional health service without having first obtained a certificate of need for such services." Such penalties include "the withholding of federal and State funds under Titles V, XVII, and XIX of the Social Security Act for reimbursement of capital and operating expenses related to the provision of the new institutional health service." N.C. Gen. Stat. § 131E-190(d) (2005). Most importantly, DHHS is empowered to "revoke or suspend the license of any person who proceeds to offer or develop a new institutional health service without having first obtained a certificate of need for such services." N.C. Gen. Stat. § 131E-190(e) (2005).

Whether Community has offered a "new institutional health service" for which a CON is required is precisely the substantive issue raised by HPC in its contested case. In light of N.C. Gen. Stat. § 131E-190, the trial tribunal's resolution of this issue has a significant "practical effect on the existing controversy," as DHHS may revoke the license for Community's Mecklenburg County hospice office, at which time the office would cease to be "fully operational." In fact, the Licensure and Certification Section letter accompanying

---

2. "In federal courts the mootness doctrine is grounded primarily in the 'case or controversy' requirement of Article III, Section 2 of the United States Constitution and has been labeled 'jurisdictional' by the United States Supreme Court." *In re Peoples,* 296 N.C. at 147, 250 S.E.2d at 912 (1978). "In state courts the exclusion of moot questions from determination is not based on a lack of jurisdiction but rather represents a form of judicial restraint." *Id.* at 147, 250 S.E.2d at 912-13.

HOSPICE & PALLIATIVE CARE CHARLOTTE REGION v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[185 N.C. App. 109 (2007)]

this license expressly stated: "It should be noted that this decision is based only on the facts represented by you in your July 22, 2005 correspondence [requesting licensure] and the July 20, 2005 "No Review" letter [issued by the CON Section.]"

Community cites the North Carolina Supreme Court's per curiam decision in *Mooresville Hosp. Mgmt Assocs Inc. v. N.C. Dep't of Health & Human Servs.*, 360 N.C. 156, 622 S.E.2d 621 (2005) in support of its position. In *Mooresville*, the Court described the procedural posture of that case as follows:

> While the appeal was · pending, respondent-intervenor Presbyterian Hospital obtained an operating license from DHHS. On 19 November 2004, before the Court of Appeals issued its decision, respondent-intervenors filed in that court a motion to dismiss petitioner's appeal as moot because construction of Presbyterian Hospital had been completed and the hospital was fully operational.

360 N.C. 156, 157-58, 622 S.E.2d 621, 622. Later, the Court announced, "[w]e conclude that the Court of Appeals erred in denying respondent-intervenors' motion to dismiss as moot." *Id.*

Based on the above-quoted statements, Community urges this Court to conclude *Mooresville* established the rule that a contested case is always moot when the challenged health service becomes "fully operational." We do not believe that the per curiam opinion in *Mooresville* stands for this broad proposition. Such an interpretation would accelerate the unlawful development of new institutional health services, encouraging health service providers to make questionable projects "fully operational" before an "affected party" has time to challenge the action.[3] For example, in the case *sub judice*, Community alleges that HPC could not file a contested case on 29 July 2005 because its Mecklenburg County hospice office became "properly licensed and fully operational" on 25

---

3. N.C. Gen. Stat. § 131E-188(a) provides that "any affected person" may contest the CON Section's decision to "issue, deny, or withdraw a certificate of need or exemption." *See also Hospice at Greensboro, Inc. v. N.C. Dep't of Health & Human Servs.*, —— N.C. App. ——, ——, —— S.E.2d ——, —— (2007) (COA06-1204) (holding that the CON Section's issuance of a "No Review" letter is an "exemption" for purposes of N.C. Gen. Stat. § 131E-188). "[A]ny person who provides services, similar to the services under review, to individuals residing within the service area or the geographic area proposed to be served by the applicant," is an "affected party." N.C. Gen. Stat. § 131E-188(c) (2005). HPC is an existing hospice care provider in Mecklenburg County and is, therefore, an "affected party" pursuant to N.C. Gen. Stat. § 131E-188(c).

114          IN THE COURT OF APPEALS

HOSPICE & PALLIATIVE CARE CHARLOTTE REGION v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[185 N.C. App. 109 (2007)]

July 2005, just five days after the CON Section privately issued the "No Review" letter.

The facts of *Mooresville* are dispositively different from the facts of the contested case *sub judice*. In *Mooresville*, a respondent-intervenor obtained a CON before constructing the replacement hospital, but the petitioner contested an alleged procedural defect in the CON review process. *Id.* Here, Community did not obtain a CON before developing its Mecklenburg County hospice office. The substantive question on appeal is whether Community's Mecklenburg County hospice office is a "new institutional health service" for which it was required to obtain a CON and this Court's resolution of Community's appeal may subject Community to sanctions pursuant to N.C. Gen. Stat. § 131E-190.

For the reasons stated above, we hold that DFS did not err by concluding that the Licensure and Certification Section's issuance of a license for Community's Mecklenburg County hospice office, which then became "fully operational," did not moot the contested case filed by HPC. This assignment of error is overruled.

### III. "New Institutional Health Service"

[2] Community argues that DFS erred by deciding that its Mecklenburg County hospice office is a "new institutional health service" for which it must obtain a CON. Citing *In re Total Care*, 99 N.C. App. 517, 393 S.E.2d 338, *disc. rev. denied*, 327 N.C. 635, 399 S.E.2d 122 (1990), Community contends that it was not required to obtain a CON before opening its Mecklenburg County hospice office because the office is a "branch office" of its Johnston County hospice. Community reasons that before 31 December 2005, a CON was not required to open a branch hospice office, even if the branch office was located outside the parent hospice's service area. We disagree.

In *Hospice at Greensboro*, which is filed concurrently with this opinion, this Court held that "an existing institutional health service must obtain a new CON to open a 'branch office' outside its service area." *Hospice at Greensboro, Inc. v. N.C. Dep't of Health & Human Servs.*, 185 N.C. App. ——, ——, —— S.E.2d ——, —— (2007). "Such an office, regardless of the label affixed by its developer, is a 'new institutional health service' for which a CON is required." *Id.* Our holding in *Hospice at Greensboro* applied to the definition of "new institutional health service" as set forth in N.C. Gen. Stat. § 131E-176 prior to 31 December 2005, *Hospice at Greensboro*, 185 N.C. App. at ——

n.7, —— S.E.2d at —— n.7,[4] and is applicable to the instant case, in which Community obtained a "No Review" letter from the CON Section on 20 July 2005.

Accordingly, we hold that Community's Mecklenburg County hospice office is a "new institutional health service" for which it must obtain a CON. This assignment of error is overruled.

### IV. Conclusion

For the reasons stated above, the final agency decision entered by DHHS, DFS Director Robert J. Fitzgerald on 9 August 2006 awarding summary judgment to HPC is affirmed.

AFFIRMED.

Judges ELMORE and STEELMAN concur.

———

4. Recently, the General Assembly further amended the statutory definition of "new institutional health service" to include "the opening of an additional office by an existing . . . hospice within its service area . . . or outside its service area." 2005 N.C. Sess. Laws 1179. Although this session law was ratified by the General Assembly on 16 August 2005 and signed by the Governor on 26 August 2005, it did not "become[]" effective for hospices and hospice offices" until 31 December 2005. 2005 N.C. Sess. Laws 1184.